UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| RE-BORNE, INC., | ) | |
| | ) | Civil No. 3:17-cv-00023-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| PANTHER II TRANSPORTATION, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

In 1906, Congress enacted a uniform set of rules governing interstate shipments referred to as the Carmack Amendment. These rules, among other things, govern liability when cargo is damaged. They also preempt most state law claims arising from damages. Here, Re-Borne, Inc.'s claims include those made pursuant to state law. Since their claims are preempted, Panther II Transportation, Inc.'s Motion to Dismiss [R. 5] is **GRANTED**.

**I**

Defendant Panther operates as an interstate motor carrier. In 2016, it transported Whole Bovine Colustrum for Re-Borne from Simpsonville, Kentucky, to Libertyville, Illinois. [R. 5 at 1.] Re-Borne asserts that its product is unique because it is never heated, but remains frozen before, during, and after a sterilization process. [R. 7 at 4.] Re-Borne alleges that Panther did not follow its detailed instructions on how to maintain the Colostrum during transport and the Colostrum was ruined. [R. 7 at 6.] Without knowing the Colostrum had been ruined, Re-Borne sold the Colostrum to its customers, which resulted in loss of "significant sales, as well as goodwill and customers." [R. 7 at 6.]

There was apparently no bill of lading signed between the parties, but only a Handling Contract, which detailed how the Colostrum should be handled, with very detailed instructions regarding the required temperatures and expected timeframes for delivery. [R 7 at 9; R. 1-1 at 19.] It appears to be initialed by the driver for Panther. [R. 1-1 at 19.]

Plaintiff brings four causes of action [*see id.*] and seeks damages due to the "total loss of its colostrum product it entrusted to Panther, and [] also lost goodwill and expected future profits from its customers." [*Id.* at 4.] Plaintiff originally filed this suit in Jefferson Circuit Court and Defendants removed. [R. 1.]

## II

"The Carmack Amendment, enacted in 1906 as an amendment to the Interstate Commerce Act, 24 Stat. 379, created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). "The Amendment restricts carriers' ability to limit their liability for cargo damage [and] makes a motor carrier fully liable for damage," but provides mitigation for carriers by preempting state and common law claims so they may adequately determine the amount of potential liability they are incurring. *Exel, Inc.*, 807 F.3d at 148. The Carmack Amendment does not impose absolute liability, but only liability caused by the carrier. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913). There is no dispute that common and state law claims are preempted by the Carmack Amendment. *See Adams Express*, 226 U.S. at 505 ("there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it"); *see also New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S. Ct. 986, 988, 97 L. Ed. 1500 (1953) ("With the

enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss.").

To determine whether or not an item was moved in interstate commerce for purposes of this act, "[t]he actual facts govern. . . [T]he destination intended by the passenger when he begins his journey and known to the carrier, determines the character of the commerce." *New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128, 130 (1953). Though the Amendment requires the "initial carrier to issue a receipt or bill of lading . . . when it receives property for transportation from a point in one state to a point in another," *Adams Express*, 226 U.S. at 504, the "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C.A. § 14706 (West); *see also CNA Ins. Co. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 355 (6th Cir. 2014) ("an actual or tangible bill of lading is not necessary to impose liability on the initial carrier under Carmack's plain terms"). There are few exceptions to state law preemption under the Carmack Amendment. *See Exel, Inc.*, 807 F.3d at 148 (holding, in part, that a third-party broker does not have a right to sue under the Carmack Amendment). None are applicable here.

Here, both parties agree that the Carmack Amendment applies in this case of "carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc.*, 807 F.3d at 148. Panther was transporting the Re-Borne product from Kentucky to Illinois and back again. As part of that transport, Panther agreed in the Handling Contract that it would deliver the Colostrum to a third party vendor and wait for the Colostrum to be processed by that third party vendor, put it back in their truck and transport it back to Re-Borne to be distributed. [R. 1-1.] Re-Borne alleges that Panther did not follow the Handling Contract and left the Colostrum on a loading dock in very hot weather. [R. 1-1 at 12.] Though there is no bill of lading, the Handling Contract is adequately detailed for this Court to determine that the alleged damage to the

Colostrum occurred while the item was in transit between states and, thus, this action falls squarely under the Carmack Amendment. *See New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128, 130 (1953). This alleged action, leaving the Colostrum on the loading dock, has led to all of Plaintiff's causes of action. Plaintiff alleges the Colostrum was damaged by being left on the loading dock, during interstate transport and, therefore, the causes of action for breach of contract, breach of implied duty of good faith and fair dealing, and negligence are preempted.

Defendants rely in part on *Gordon v. United Van Lines, Inc.*, 130 F.3d 282 (7th Cir. 1997), which does not support their case. In *Gordon*, the Seventh Circuit found that "the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Id.* at 289. In *Gordon*, the Seventh Circuit held that a claim for intentional infliction of emotional distress was entirely distinct from the Plaintiff's loss of goods and, thus, not preempted. *Id.* at 289. However, they simultaneously held that claims for breach of contract, willful and wanton misconduct, and violation of a state fraud statute were all preempted. *Id.* at 289. Here, this is no such claim that is entirely separate from the loss of goods. Each and every paragraph of Plaintiff's complaint is tied to the damage of Colostrum during interstate transport and their prayer of relief, for compensatory damages for past and future lost profits, all point to the damaged Colostrum. There is no cause of action that is that is "separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Id.* at 289.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

As Plaintiff's state law claims are preempted, no relief can be granted and those motions are dismissed pursuant to Rule 12(b)(6).

### III

Accordingly, having considered the record, applicable law, and the arguments of the parties, the Court hereby **ORDERS** that Defendant's Motion to Dismiss Counts One through Three of Plaintiff's Complaint is **GRANTED**. [R. 5.] An Order for Meeting and Report will be entered shortly.

This the 28th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge